UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF INDIANA
                          HAMMOND DIVISION

JOSIE MARIA CONGIOUS,            )
      Plaintiff,                 )
                                 )
      v.                         )     CAUSE NO.: 2:15-CV-131-PRC
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of the       )
Social Security Administration,  )
      Defendant.                 )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Josie Maria Congious on April 3, 2015, and a Brief in Support of Plaintiff's Motion for Summary Judgment [DE 20], filed by Plaintiff on September 21, 2015. Plaintiff requests that the November 25, 2013 decision of the Administrative Law Judge denying her claim for disability insurance benefits be reversed and remanded for further proceedings. On December 28, 2015, the Commissioner filed a response, and Plaintiff filed a reply on January 14, 2016. Because the ALJ erred at step three in finding that Plaintiff does not meet Listing 14.02, the Court grants Plaintiff's request for remand.

## BACKGROUND

Plaintiff filed for disability insurance benefits on January 10, 2012. Her claim was denied initially and upon reconsideration. Plaintiff timely requested a hearing, which was held on November 12, 2013, and presided over by Administrative Law Judge (ALJ) Angelita Hamilton. Present at the hearing were Plaintiff, her non-attorney representative, and an impartial vocational expert.

The ALJ issued a written decision on November 25, 2013, concluding that Plaintiff was not disabled based on the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.

2. The claimant has not engaged in substantial gainful activity since September 3, 2011, the alleged onset date.

3. The claimant has the following severe impairment[s]: lupus, degenerative disc disease; COPD; and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) in that the claimant can lift or carry ten (10) pounds occasionally and less than ten (10) pounds frequently, can stand and/or walk about two (2) hours and can sit about six (6) hours during an eight hour workday, except: the claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but she must never climb ladders, ropes, or scaffolds; the claimant can tolerate occasional exposure to wetness, humidity, and excessive vibration; the claimant can tolerate occasional exposure to pulmonary irritants such as dusts, odors, fumes, and gases; and the claimant can tolerate occasional exposure to hazards such as unprotected heights, raw chemicals, and dangerous machinery.

6. The claimant is capable of performing past relevant work as a telemarketer [D.O.T. # 299.357-014]. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from September 3, 2011, through the date of this decision (20 CFR 404.1520(f)).

(AR 1-22). Plaintiff then sought review before the Agency's Appeals Council, which denied her request on February 3, 2015, leaving the ALJ's decision as the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. On April 3, 2015, Plaintiff filed this civil action pursuant to 42 U.S.C. § 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. This Court thus has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision

"without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from

engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A); 20 C.F.R. §§ 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [her] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

# ANALYSIS

Plaintiff seeks reversal and remand for an award of benefits or for further proceedings, arguing that (1) the finding that Plaintiff does not meet Listing 14.02 was not supported by substantial evidence, (2) the ALJ did not properly evaluate the treating physician and nurse practitioner opinions under 20 C.F.R. § 404.1527, (3) the RFC assessment was not supported by substantial evidence, (4) the ALJ did not evaluate Plaintiff's impairments in combination, and (5) the ALJ erred in failing to account for Plaintiff's mental limitations in the RFC and in the questions to the vocational expert.

At step three of the sequential analysis, the ALJ must determine whether a claimant's impairments meet or equal the criteria of an impairment listed in the appendix to the social security regulations. *See* 20 C.F.R. § 404.1520(a)(4)(iii). "Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett v. Barnhart,* 381 F.3d 664 (7th Cir. 2004). The responsibility for deciding medical equivalence rests with the administrative law judge. 20 C.F.R. § 404.1526(e).

At step three, the ALJ begins her analysis by making a general statement that she considered the evidence as a whole and finds that Plaintiff does not have an impairment that meets or equals a listing. The ALJ then comments that Plaintiff's representative did not argue that she meets or equals a listing and that "no treating or examining physician has indicated findings that would satisfy any listed impairment." (AR 16). The ALJ then considered Listings 1.04, 3.02, and 14,02 and discussed Plaintiff's obesity. On appeal, Plaintiff argues that the ALJ's finding that she does not meet Listing 14.02 is not supported by substantial evidence. The Court agrees.

Listing 14.00 governs "Immune System Disorders." In the opening paragraphs, section 14.00D describes how autoimmune disorders are documented and evaluated, with section 14.00D1 discussing systemic lupus erythematosus:

> D. How do we document and evaluate the listed autoimmune disorders?
>
> 1. Systemic lupus erythematosus (14.02).
>
> a. General. Systemic lupus erythematosus (SLE) is a chronic inflammatory disease that can affect any organ or body system. It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss). Major organ or body system involvement can include: Respiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ("lupus fog"), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis). Immunologically, there is an array of circulating serum auto-antibodies and pro- and anti-coagulant proteins that may occur in a highly variable pattern.
>
> b. Documentation of SLE. Generally, but not always, the medical evidence will show that your SLE satisfies the criteria in the current "Criteria for the Classification of Systemic Lupus Erythematosus" by the American College of Rheumatology found in the most recent edition of the Primer on the Rheumatic Diseases published by the Arthritis Foundation.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 14.00D1.

> More specifically, Listing 14.02, Systemic lupus erythematosus, provides:
>
> As described in 14.00D1. With:
> A. Involvement of two or more organs/body systems, with:
> 1. One of the organs/body systems involved to at least a moderate level of severity; and
> 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
> or
> B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.

3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

*Id*. at 14.02.

Addressing Listing 14.02, the ALJ wrote:

> Listing 14.02, Systemic Lupus Erythematosus, is not satisfied because the record does not show at least two of the constitutional signs, such as severe fatigue, fever, malaise, or involuntary weight loss, as contemplated by the Listing. In addition, the record shows no marked limitation in activities of daily living, social functioning, or in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

(AR 16). In neither the Listing analysis nor elsewhere in the decision does the ALJ acknowledge that Dr. Reddy (Plaintiff's treating rheumatologist) and Mr. Gardner (her treating nurse practitioner) both completed a medical equivalence form opining that Plaintiff meets Listing 14.02.

On November 15, 2012, Timothy Gardner, CRNP, completed a Listings form for "systemic lupus erythematosus (14.02)." (AR 711). The form lists the general definition of SLE taken from 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 14.00D1. The form then lists the elements of Listing 14.02 and asks the physician to "circle any and all that apply." *Id*. Under 14.02A, Mr. Gardner indicated involvement of the skin and lungs and neurologic involvement of at least a moderate level of severity and the two constitutional symptoms of fatigue and malaise. Under 14.02B, Mr. Gardner indicated that Plaintiff had a marked level of limitation of activities of daily living, noting: "She has fatigue and malaise cannot perform ADL; dizziness and seizure." (AR 712). He then checked the box next to the phrase, "It is my opinion that the patient cannot engage in full-time work activity." *Id*.

The same date, Mr. Gardner completed a Physical Capacities Evaluation. (AR 713-714). The form asks that the physician complete the form based on "clinical evaluation, other testing results,

client discussions and/or medical treatment." (AR 713). Mr. Gardner opined that Plaintiff could sit for a total of one hour a day, could stand/walk for one hour a day, and needs an opportunity to alternate sitting and standing at will throughout the day. He opined that she can use her hands for simple grasping and can use her left hand for pushing and pulling and for fine manipulation but cannot use her right hand for pushing and pulling or for fine manipulation. He opined that she cannot use her hands for repetitive motion such as writing, typing, assembly, etc. He also opined that she can use her left foot but not her right foot or both feet for repetitive movements as in operating foot controls. For exertional limitations, Mr. Gardner opined that Plaintiff can occasionally lift/carry up to 10 pounds, can never lift over 10 pounds, and can never climb, balance, stoop, kneel, crouch, crawl, or reach above shoulder level. He restricted her totally from unprotected heights, being around moving machinery, and driving automotive equipment. He found that she has a moderate restriction of exposure to marked changes in temperature and humidity and a severe restriction to exposure to dust, fumes, and gases. He opined that she suffers from fatigue for which there is a reasonable medical basis and that the fatigue is disabling to the extent that it prevents her from working full time, even in a sedentary position. (AR 714).

Mr. Gardner also completed a "Physical Effects of Pain" form, indicating that Plaintiff suffers from pain and that there is a reasonable medical basis for the pain based on "[degenerative joint disease], auto immune disorder." (AR 715). He opined that the pain is disabling to the extent that it prevents the Plaintiff from working full time, even in a sedentary position. He wrote, "She suffers [Systemic Lupus Erythematosus], [degenerative joint disease], [chronic obstructive pulmonary disease], Type II [diabetes mellitus], Seizure." (AR 715). Finally, Mr. Gardner completed

9

a "Mental Effects of Pain" form, indicating, on a scale of mild, slight, moderate, or severe, that the pain and/or side effects of medication moderately affect Plaintiff's attention and concentration.

On April 11, 2013, Mr. Gardner again completed the Physical Capacities Evaluation, the Physical Effects of Pain form, and the Mental Effects of Pain form. (AR 741-43). He gave the same opinions except that he opined that Plaintiff can frequently lift/carry up to five pounds, can occasionally lift up to twenty pounds, and can never lift over twenty pounds; that she cannot use her right hand for simple grasping; and that she cannot use either foot for repetitive movement as in operating foot controls. As for restrictions of activities, he gave her moderate restrictions in exposure to marked changes in temperature and humidity and being around moving machinery, severe restrictions in driving automotive equipment, and total restriction as to unprotected heights and exposure to dust, fumes, and gases. Finally, he opined that pain and/or the side effects of medication slightly to moderately affect her attention and concentration.

Plaintiff's treating rheumatologist, Dr. Vinay Reddy, filled out the same forms. (AR 732-37). On October 31, 2012, Dr. Reddy opined on the Physical Capacities Evaluation form that Plaintiff can sit for one hour in an eight-hour work day, can stand/walk for one hour in an eight-hour work day, needs an opportunity to alternate sitting and standing at will, cannot use either hand for pushing/pulling or fine manipulation or repetitive motion tasks, and can use both feet for repetitive movements such as operating foot controls. He opined that she can occasionally lift five pounds and never lift more than five pounds and can never climb, balance, stoop, kneel, crouch, crawl, or reach above shoulder level. Dr. Reddy assessed total restriction on unprotected heights, being around moving machinery, exposure to marked changes in temperature and humidity, and exposure to dust, fumes, and gas and moderate restriction in driving automotive equipment. He opined the Plaintiff

suffers from fatigue for which there is a reasonable medical basis and that the fatigue is disabling to the extent that it prevents her from working full time, even in a sedentary position.

On the Physical Effects of Pain form, Dr. Reddy opined that Plaintiff suffers from pain and that there is a reasonable medical basis for the pain, namely that she suffers from systemic lupus erythematosus, headaches, bursitis, gout, severe joint pain, and shoulder pain. Dr. Reddy opined that Plaintiff's pain is disabling to the extent that it would prevent her from working full time, even in a sedentary position. On the Mental Effects of Pain form, Dr. Reddy opined that pain and/or side effects of medication have a mild effect on Plaintiff's attention and concentration.

On December 6, 2012, Dr. Reddy completed the same medical equivalence form for Listing 14.02 that Mr. Gardner completed. Dr. Reddy opined that there are objective findings that Plaintiff's diagnosis satisfies the criteria identified. Under Listing 14.02A, Dr. Reddy indicated that the two systems involved are joints and skin at a severe level. As for constitutional symptoms or signs, Dr. Reddy listed severe fatigue, hair loss, skin manifestations, and severe pain. (AR 736). Under Listing 14.02B, Dr. Reddy found Plaintiff markedly limited in activities of daily living, noting that she is limited in walking, standing, and sitting and that she should not do any lifting, pulling, pushing, or bending. (AR 737).

In this case, the ALJ committed reversible error by failing to acknowledge the opinions of Dr. Reddy and Mr. Gardner when considering whether Plaintiff meets the requirements of Listing 14.02 for systemic lupus erythematosus. *See Barnett*, 381 F.3d at 668. Both doctors completed Listing equivalence forms and both found that Plaintiff meets Listing 14.02. It is insufficient that the ALJ later weighs their opinions on the Physical Capacities Assessment forms in the context of the residual functional capacity assessment. At no time during the weighing of their opinions does

the ALJ acknowledge that both treaters completed a Listing equivalence form with a finding that Plaintiff meets the Listing 14.02 under both the A and B criteria. Rather, the ALJ treats those opinions more like RFC assessments, describing Dr. Reddy as opining "disabling limitations" and describing Mr. Gardner's opinion as "medical source statements." (AR 20) (citing Ex. 23F, 26F). This is highly pertinent evidence that the ALJ failed to consider at this stage of the sequential analysis. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)).

Moreover, the ALJ erred in stating that "no treating or examining physician has indicated *findings* that would satisfy any listed impairment." (AR 16) (emphasis added). In making this statement, if the ALJ is saying that there are no treating opinions of medical equivalence, this is wrong. If, rather, the ALJ means that the medical records from those treating physicians do not support a listing, the ALJ's analysis is not supported by substantial evidence. First, the ALJ offers no analysis at step three of Mr. Gardner's or Dr. Reddy's treatment records; the ALJ does not even name Dr. Reddy and Mr. Gardner at step three. *Wurst v. Colvin*, 520 F. App'x 485, 488 (7th Cir. 2013) ("In deciding whether an impairment meets or equals a listed impairment, an ALJ must mention the relevant listings and make more than a 'perfunctory analysis' of whether the impairment meets the criteria.").

Second, the Court recognizes that the ALJ's decision must be read as a whole and, thus, considers the ALJ's discussion of the opinions of Dr. Reddy and Dr. Gardner in the RFC analysis. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). As an initial matter, the ALJ's discussion of the opinions in the context of the RFC does not address the requirements of the

Listing. And, the ALJ's weighing of the opinions of Dr. Reddy and Mr. Gardner in the context of the residual functional analysis is not supported by substantial evidence.

Under what is known as the "treating physician rule," the opinion of a treating physician on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] case record." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); 20 C.F.R. § 404.1527(c)(2). When an ALJ does not give controlling weight to the opinion of a treating physician, she must weigh the opinion in accordance with the factors in 20 C.F.R. § 404.1527. *See* 20 C.F.R. § 404.1527(c)(2) ("When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion."); *Scrogham v. Colvin*, 765 F.3d 685, 697-98 (7th Cir. 2014); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2006).

The primary reason the ALJ discounts Dr. Reddy's opinion is that some medical evidence does not appear to support his findings. However, many other records, and, indeed, the record overall, appears consistent with Dr. Reddy's opinions. While the ALJ notes several normal findings, the ALJ omits references to other complaints throughout the same records showing that Plaintiff suffered discoid lesions, joint pain, headaches, dizziness, and extremity weakness and numbness, all of which are consistent with Dr. Reddy's medical opinion on equivalence. For example, Plaintiff was referred to Dr. Reddy in September 2010 by her primary care physician because of complaints of headaches, nosebleeds, breathing difficulties, and rashes on her head. Dr. Reddy prescribed medications to treat her lupus and related symptoms of headaches, hair loss, and joint pain. Despite

13

a notation of negative lab results (one of the facts relied on by the ALJ), Dr. Reddy did not change his diagnosis or her medication regimen. And, Dr. Reddy opined that Plaintiff experiences disabling pain due to her degenerative joint disease and lupus. While some findings showed normal range of motion in joints, in April 2012, consultative examiner Dr. Bautista noted that Plaintiff would not perform lumbar range of motion testing due to pain. Although the ALJ describes some normal findings in the treatment records throughout 2012, the ALJ fails to note Plaintiff's ongoing complaints (often her primary complaint and purpose for the visit) of severe headaches in those same records. *See* (AR 19); (AR 484, 598, 650, 654).

In giving less weight to Dr. Reddy's opinion, the ALJ also notes a single statement in the record that Plaintiff's lupus was "under control." (AR 19). The comment was made on March 6, 2012, by Dr. Sanheev Maniar, Plaintiff's treating neurologist, who was evaluating Plaintiff for her complaint of ongoing headaches. (AR 491). The statement was not made by Dr. Reddy, Plaintiff's rheumatologist. Days earlier, on February 28, 2012, Plaintiff was seen by Dr. Reddy with swollen, tender joints and decreased grip strength; Dr. Reddy planned to give her infusion treatments for her lupus symptoms. A few weeks after seeing Dr. Maniar, Plaintiff received a shoulder injection from Dr. Reddy. It is not clear who determined that Plaintiff's lupus was "under control," what the comment means medically, and what weight, if any should be given to the comment. The comment should not have been given weight in discounting the opinion of the treating rheumatologist.

As for Mr. Gardner, Plaintiff's treating nurse practitioner, the ALJ recognized that Mr. Gardner was Plaintiff's primary care provider but then discredited his opinion, which is described only as "medical source statements," based on "no significant neurological findings," Plaintiff typically having a normal gait, and Plaintiff's activities of daily living:

14

> Further, the record shows that the claimant can engage in a wide variety of activities of daily living, including taking care of grandchildren, performing personal care tasks, using public transportation, cooking and preparing meal trays for the whole week, and shopping for groceries. The claimant also spends time playing cards and going out to eat with friends.

(AR 21). But a careful reading of the testimony from which those daily activities are taken demonstrate significant limitations in each. While Plaintiff testified that she walks in the mornings, she explained that she walks for 15-20 minutes around her apartment or the apartment complex to allow her medication to "settle." (AR 37). She relies on her family and friends to drive her to stores and assist with shopping; she testified that she would not be able to shop independently. (AR 47). For preparing meals, she testified that on her best days, "I try to prepare my meals for a whole week. Because I don't know what the next day – how my days are. So, I try to prepare my meals when I'm feeling better for a whole week." (AR 38). When asked whether she sweeps, mops, and vacuums, she responded that she leaves that for her grandchildren on the weekend. She washes her own dishes but leaves the laundry for her grandchildren as well. She testified that she has trouble raising her arms to wash her hair and uses a holding bar in the shower. She reduced her attendance at church from twice a week to once a week; the services last two hours, and she often goes to the basement of the church and lies down on a cot. As for social activities, she testified that she can no longer go bowling, on outings, to picnics, or camping. Instead, she plays video games with her grandchildren. For meals, the grandchildren bring their own trays of food or reheat food that she cooked earlier in the week in the microwave. She testified that she helps her grandchildren with math and spelling. She testified that she can sit for forty-five minutes before she must move. There is one reference in the record to Plaintiff playing cards; on September 10, 2012, Plaintiff reported to a psychologist that she regularly plays cards with people who visit her. (AR 679). She also reported that she

15

accompanies them to go shopping or out to eat. *Id*. The full picture of Plaintiff's activities of daily living are not inconsistent with Mr. Gardner's opinion.

Although the ALJ is not required to articulate her analysis of each of the factors under § 404.1520(c) when weighing treating opinion evidence, substantial evidence must nevertheless support the ALJ's balancing of those factors. The fact that the ALJ's opinion is inconsistent with *some* of the objective medical evidence does not take into account the whole of the medical record.

The ALJ is correct that the ultimate finding of whether a claimant meets a Listing or is disabled falls to the ALJ; however, the ALJ must consider a medical opinion on equivalence and the forms that treating physicians are asked to complete explicitly ask for an opinion as to whether the claimant meets the Listing and whether the claimant is able to work. *See* (AR 20 (ALJ Decision)); (AR 737 (Listing equivalence form by Dr. Reddy)). These treating source opinions assist the ALJ in carrying out her duty and must be considered and properly weighed.

Given the ALJ's failure to note that both treating providers completed Listing equivalence forms, that the ALJ described those forms in terms suggesting that they were something other than Listing equivalence forms, and the assignment of "little weight" to both treating providers' opinions based on a selective reading of the medical records, substantial evidence does not support the weight given to the treating physicians' opinions or the step three Listing analysis. *Compare Summers v. Colvin*, 634 F. App'x 590, 593 (7th Cir. 2016); *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015).

Plaintiff also argues that the RFC assessment is not supported by substantial evidence because the ALJ rejected all physician opinions on functional limits and then created her own unsupported RFC assessment. However, an ALJ is not required to adopt any particular doctor's RFC opinion as the regulations provide that the RFC determination is the responsibility of the ALJ. *See*

20 C.F.R. § 404.1546(c); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). And an ALJ does not create a "middle ground" when the ALJ rejects opinion testimony but nevertheless bases the RFC on the evidence of record. *See Hannah-Walker*, (2013). On remand, if the ALJ reaches the RFC determination, the ALJ is directed to properly weigh the treating opinions and to fully discuss the degree to which Plaintiff is capable of performing her daily activities. The ALJ must also consider Plaintiff's complaints of fatigue, medication side effects, and migraine headaches as well as the effect of Plaintiff's impairments in combination. And, the ALJ must discuss Plaintiff's mild mental limitations in the RFC analysis.

Finally, Plaintiff requests that the Court reverse and remand for an award of benefits or, in the alternative, for additional proceedings. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Based on the discussion above, remand, not an immediate award of benefits, is required.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in the Brief in Support of Plaintiff's Motion for Summary Judgment [DE 20], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

SO ORDERED this 22nd day of September, 2016.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT